IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 1:17-CR-327-MHC |
| JOSHUA EPIFANIOU | : | NO. 1:21-CR-024-MHC |
| a/k/a Charley Sullivan | : | |
| a/k/a Chary Malatan | : | |
| a/k/a Richard Charley | : | |


## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through its counsel, Kurt R. Erskine,

Acting United States Attorney, and Nathan P. Kitchens, Assistant United States

Attorney for the Northern District of Georgia, hereby submits this Sentencing

Memorandum.

## INTRODUCTION

The Defendant conducted a brazen and prolonged cyber extortion scheme

that targeted multiple victims by holding stolen personally identifiable

information as leverage for ransom payments. As a result, the Defendant

collected large ransoms from victims, triggered labor-intensive remediation from

at least two victims, and jeopardized the privacy of thousands of website users.

In a separate but related scheme, the Defendant repeatedly hacked into one of his

victims and made thousands of website alterations on behalf of paying clients.

Despite this serious harm, the Defendant requests a four-level downward variance that would result in his immediate release based on questionable math and unsupported assertions. This request serves only to highlight his lack of remorse, which bolsters the need for a meaningful federal prison sentence.

The Defendant's conduct justifies a 57-month term of imprisonment, at the low end of the adjusted guidelines range, in light of the grave seriousness of his offenses and the need for general deterrence.

### ARGUMENT

**I.      The Seriousness of the Offenses Warrants a Meaningful Custodial Sentence.**

The Defendant should receive a 57-month prison sentence because of the seriousness of his offenses, which were conducted with deliberation and sophistication and put at risk the personal information of thousands of users. *See* 18 U.S.C. § 3553(a)(2)(A).

**a.  The deliberation and sophistication required for Defendant's extortion warrants a 57-month sentence.**

From October 2016 until his arrest by Cyprus authorities in May 2017, the Defendant hacked into multiple companies and extorted them by threatening to disclose sensitive data. This was not a mistake, a poor decision in the heat of the moment, or an immature prank. This was series of sinister cyber attacks designed to cripple major companies for his own personal gain. This cyber

extortion scheme "required 'careful calculation and deliberation,'" which is an aggravating factor supporting a substantial sentence. *United States v. Matthews*, 477 F. App'x 585, 588 (11th Cir. 2012) (affirming upward variance of 19 months based, in part, on repeated deposits of stolen checks worth more than $400,000 over "prolonged period" of several months).

The Defendant's confession underscores the deliberation required to commit his offenses over a span of months. The Defendant did not victimize particular websites by happenstance; instead, he researched potential victims to target by analyzing website traffic rankings. PSR ¶ 35. After selecting a victim, the Defendant probed the victim website for vulnerabilities and, in certain cases, gained unauthorized access to the network. *Id.*; *see also* PSR ¶ 47. The Defendant then utilized a combination of proxy servers and a Russian email address to obfuscate his identity while sending ransom demands to his victims. *Id.* ¶ 35. In each case, the Defendant threatened the release of sensitive personal information about the websites' users if his ransom demand was not met within two days. *Id.* ¶¶ 26, 48, 51, 59. His victims were left with a stark choice:  pay ransoms or be held responsible for the disclosure of PII belonging to thousands of users. The Defendant's extortion scheme was highly successful because of his planning from its inception through execution against victim after victim.

Although the guidelines calculations appropriately apply a two-level enhancement under USSG § 2B1.1(b)(10) for a significant portion of the offense being committed from Cyprus, the same two-level enhancement would apply on an independent ground because the offense plainly also involved sophisticated means. As discussed, the Defendant hacked into multiple websites and then obscured his identity by using proxy servers and cryptocurrency payments. PSR ¶¶ 27, 35, 48, 52. The Defendant's attack on one of the victims, an Arizona-based consumer report websites, was even more sophisticated and pernicious. After extorting the website, the Defendant repeatedly hacked into the website and altered its content for money, making more than 7,500 changes or deletions over several weeks in late 2016. *Id.* ¶ 64.

This attack underscores another factor justifying a meaningful additional prison sentence: his malicious intent in committing the offense. Based on the Defendant's account, he knowingly transmitted commands to intentionally cause damage to the Arizona victim's website, conduct akin to a violation of 18 U.S.C. § 1030(a)(5)(A). The United States Sentencing Commission recognized that such offenses committed with malicious intent were "singled out by Congress as being of particular concern" and created a four-level sentencing enhancement under USSG § 2B1.1(b)(19)(A)(ii) to deter such conduct. *Report to Congress: Increased Penalties for Cyber Security Offenses*, U.S. Sentencing Commission, at 9

(May 2003), *available at* https://www.ussc.gov/sites/default/files/pdf/

news/congressional-testimony-and-reports/computercrime/200304_

RtC_Increased_ Penalties_Cyber_Security.pdf. Because the Defendant was

instead convicted of an offense under § 1030(a)(2), this four-level enhancement

does not apply here. But given the Defendant's admission that he intended to

cause damage to the network consistent with a violation of Section 1030(a)(5)(A),

the guidelines range here, if anything, understates his culpability by not

accounting for his malicious intent in committing this offense.

Based on the Defendant's multiple extortionate acts planned with

deliberation over a considerable period of time, the sophistication required to

execute the scheme and hide his tracks, and the malicious intent to damage the

Arizona victim, the seriousness of his offense justifies a meaningful additional

sentence of imprisonment.

### b. The gravity of losses suffered by the victims warrants a 57-month sentence.

The toll suffered by the victim websites reflects the severity of the

Defendant's crime. While the loss amount exceeding $680,000 is substantial, it

does not capture the full impact of the Defendant's cyber attacks. The true

measure of harm to each victim is found not in the raw amount of ransoms paid

but in the strain created for website operators trying to protect their customers

and business while ensuring that the company's network was not still at risk

after the threatening messages were sent. Two of the victims spent significant sums for remediation after the Defendant's attacks. PSR ¶¶ 37, 53–54.

Beyond the direct monetary losses suffered by the websites, the Defendant's crimes posed a broader threat to every individual whose personal information was used for leverage in demanding ransoms. The Sentencing Guidelines broaden the definition of victims in cases involving means of identification to include individuals whose PII was "used unlawfully or without authority." USSG § 2B1.1, cmt n.4(E). Although a victim enhancement should not apply here because the means of identification of at least ten people were not used in the extortion scheme, this Application Note signals the Sentencing Commission's recognition that the grave risk posed by identity theft is deserving of more serious punishment. Cybercrime too often weaponizes sensitive data belonging to individuals, putting them at risk of identity theft, phishing attacks, or other criminal schemes. The Defendant here did not publicly disseminate any personal data, but his repeated threats to do so exacted harm to the thousands of website users whose personal information was stolen by the Defendant.

## II. The Need for General Deterrence Warrants a Substantial Custodial Sentence.

A meaningful prison sentence is also necessary based on the need for general deterrence against further criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B).

The public's interest in deterrence is particularly acute in cases like this because deterrence is essential to reducing the ever-increasing costs of computer hacking.

The devastating scale of the Defendant's cyber extortion supports a sentence that recognizes an "important goal of sentencing in a white-collar crime prosecution: the need for general deterrence." *United States v. Kuhlman*, 711 F.3d 1321, 1328 (11th Cir. 2013). The Eleventh Circuit has recognized that "[b]ecause economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotation marks and alteration omitted).

The public's interest in deterring cybercrime cannot be overstated. According to one estimate, the average total cost in 2017 to a victim company from a data breach was approximately $7.35 million. *See* Report of the Attorney General's Cyber Digital Task Force, July 2, 2018, at 27, *available at* https://www.justice.gov/ag/page/file/1076696/download (citing Ponemon Institute, 2017 Cost of Data Breach Study: United States, at 1). The Internet Crime Complaint Center ("IC3"), the FBI unit that receives and tracks cybercrime complaints from victims, received a total of 1,795 complaints of corporate data breach in 2019, with reported losses exceeding $53 million. *See* Federal Bureau of Investigation, 2019 Internet Crime Report, at 20, *available at*

https://ic3pdfs.blob.core.usgovcloudapi.net/docs/2019_IC3Report.pd.

Extortion was the third most prevalent type of cyber attack by the number of

victims, causing more than $100 million in losses in 2019. *Id.* at 19–20. These

figures highlight that compromises to a company's systems and extortion

schemes impose a tremendous cost beyond the cost of any ransom paid because

the victim company must expend considerable resources to identify the full

scope of the breach and fix any vulnerabilities, ensure the protection of PII and

other sensitive data, notify their customers, and report and respond to federal

and state regulatory agencies in the aftermath of a breach.

As was true here, investigations of major hacking cases are challenging, as

investigators and law enforcement must work quickly to collect and preserve

data from around the world before the bad actors have destroyed or encrypted it,

analyze that data to accurately attribute the work to a particular individual, and

then successfully apprehend that individual, often relying on extradition

requests to foreign countries. Criminals such as the Defendant use increasingly

sophisticated tools and techniques to obfuscate their true identities, and their

infrastructure is frequently scattered across multiple international jurisdictions,

as was the case here. With minimal capital investment, the Defendant was able to

profit richly from his criminal activity by stealing data from protected computer

networks in the United States and elsewhere, all while safely sitting at a

8

computer in his mother's house half a world away. Indeed, even in instances where U.S. law enforcement successfully collects the requisite evidence and identifies the actors at issue, bringing those individuals to justice in a U.S. court poses its own challenges, and the government sometimes publicly announces charges without apprehending the defendants. *See, e.g.*, *United States v. Savandi et al.*, No. 18-CR-473 (N.D. Ga.) (charging two Iranian hackers with cyber extortion in connection with the City of Atlanta ransomware attack). Here, the Department of Justice, American diplomats, and Cypriot prosecutors expended substantial effort to secure the Defendant's extradition after a protracted 30-month battle, underscoring the hurdles to bringing hackers to justice in U.S. courts.

As a result of the significant resources required to mount a successful hacking prosecution, convictions of foreign hackers are relatively rare. Consequently, the importance of affording general deterrence through meaningful sentences is particularly acute in criminal hacking cases: where the incidence of prosecution is lower, the level of punishment must be higher to obtain the same level of deterrence. Moreover, the need for general deterrence is greatest in cases involving particularly lucrative and difficult-to-detect hacking schemes, such as the sophisticated scheme in which the Defendant participated. *Cf. United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that

9

either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."). Despite the gravity of the cyber extortion threat, the government is aware of only two prior successful cyber extortion prosecutions in this district, both of which involved American defendants and culminated in lengthy prison sentences. *See United States v. Kight*, 1:18-CR-169-TWT (N.D. Ga.) (Doc. 69) (sentencing defendant to 92 months in prison for extortion, computer fraud, and wire fraud after the defendant hacked into multiple companies, stole data, and demanded ransoms in exchange for release of the data); *United States v. Ford*, 1:15-CR-319-ELR (N.D. Ga.) (Doc. 57) (sentencing defendant to 57 months in prison for cyber extortion and cyber stalking of dozens of women).

A substantial sentence sends a message to others here and elsewhere that even if the likelihood of being apprehended is not substantial in light of the inherent challenges in catching foreign hackers, the consequences of such conduct will be. For all these reasons, sentences for lengthy criminal hacking schemes conducted against U.S. victims from thousands of miles away should be substantial in order to afford adequate deterrence. Sending the Defendant back to Cyprus with credit for his time served while contesting his extradition sends the contrary message that, even if caught, hackers will not face significant consequences in the United States for attacks on American victims.

**III.    The Defendant's Request for a Four-Level Downward Variance Is Substantively Unreasonable under the 18 U.S.C. §3553(a) Factors.**

Despite the gravity of the harm caused by the Defendant's acts and the strong need to deter foreign hackers from targeting American victims, the Defendant asks for an immediate release from custody with no further repercussions. This recommendation rests on faulty math and improper weighing of the Section 3553(a) factors, which support a substantial federal prison sentence.

**a.    The Defendant is requesting a 20-month downward variance equivalent to a four-level reduction in his offense level.**

As an initial matter, the Defendant tries to obscure the magnitude of his downward variance request by contending that he is only seeking a 2.45-month variance, despite the gap of twenty months between a low-end sentence and his request for immediate release. To be clear, the parties do not dispute that the Bureau of Prisons ("BOP") will credit the Defendant for his roughly 37 months of time served since he was detained in Cyprus in February 2018 on the United States' extradition request. But the Defendant overreaches in claiming that this 37-month sentence would constitute "almost the entirety of a low-end guideline sentence." (Doc. 37 at 1). This argument relies on fuzzy math that distorts the record and the statutory purpose for crediting prisoners for good conduct in BOP custody and time served on the same offense.

The Defendant first asks this Court to apply a downward variance of roughly nine months to grant him a "good-time reduction" for the years spent outside of Bureau of Prisons custody, (*id.* at 2), but this request would upend the statutory purpose of "good time" credit. The "good time" provision in Section 3624 is part of the Sentencing Reform Act of 1984, which Congress enacted "to achieve both increased sentencing uniformity and greater honesty by 'mak[ing] all sentences basically determinate.'" *Barber v. Thomas*, 560 U.S. 474, 481–82, 130 S. Ct. 2499, 2505 (2010) (quoting *Mistretta v. United States*, 488 U.S. 361, 367, 109 S. Ct. 647 (1989)). Congress thereby replaced the parole system in which prisoners "routinely" served only a portion of the sentence imposed with a system in which the sentence imposed would be "actually served" absent good time credit. *Id.* Section 3624(b) provides credit only for "exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b)(1). The Supreme Court thus recognized that the "good time" exception is "limited" and "tailored to its purpose" to incentivize and reward prisoners for "a readily identifiable period of good behavior." *Barber*, 560 U.S. at 482, 130 S. Ct. at 2505.

The Defendant's request for a variance for "good time" spent outside of BOP custody would undermine the statutory purpose of this provision by granting a reduction, as of right, instead of incentivizing "exemplary compliance" while in BOP custody. 18 U.S.C. § 3624(b)(1). Such a reduction

would be unfair to other prisoners held in state prisons or pretrial detention and who do not receive similar "good time" credit. There is no factual or legal basis supporting an automatic extension of "good time" credit to account for time spent in a foreign prison while a defendant is vigorously contesting extradition, and the Defendant's proposal would undercut Congress's objective to make sentences "determinate."

The Defendant seeks a further nine-month variance "in the interests of equity and fairness" for time spent in Cyprus custody for an arrest by Cyprus authorities on an unrelated alleged attack on a Cyprus victim, (*id.* at 2), but there is nothing equitable or fair about extending the Defendant special treatment compared to other defendants held in custody for unrelated offenses. As the Defendant acknowledges, the Bureau of Prisons will not grant a prisoner credit for prison time served for a separate alleged offense unrelated to the federal "offense for which the sentence was imposed." 18 U.S.C. § 3585(b). Moreover, the authority to grant credit for time served in another jurisdiction "is vested in the Attorney General, not the sentencing court." *United States v. Alexander*, 609 F.3d 1250, 1259–60 (11th Cir. 2010). Here, the Defendant was held in Cyprus custody from May 17, 2017 until February 8, 2018 pursuant to Cyprus charges arising from a distributed denial of service ("DDoS") attack against a Cyprus-based internet service provider. PSR ¶ 33. This alleged DDoS attack against a Cyprus

victim bears no relation to the extortion scheme against United States victims for

which the Defendant is being sentenced here. It thus would be inequitable to

grant the Defendant credit for time served in connection with an unrelated

offense charged by Cyprus authorities when other defendants, consistent with

Section 3585(b), receive no credit for time served in state custody on unrelated

charges. And it would be unfair to the victims here for the Defendant to receive a

benefit for time served for unrelated conduct allegedly committed in Cyprus.

The Defendant served separate time in custody for separate alleged harm in

Cyprus, and no justice would be served in deducting this time from a sentence

appropriate to reflect the magnitude of harm caused in the United States.

### b. A fair balancing of all the Section 3553(a) factors does not support a four-level downward variance.

The Defendant requests a downward variance resulting in his immediate

release based on his payment of full restitution and personal characteristics, none

of which justifies the substantial reduction he is seeking.

First, the Defendant cites his payment of full restitution as a basis for a

downward variance. (Doc. 37 at 4–5).[1] While the Defendant's payment of

restitution is commendable, restitution payments prior to sentencing typically

---

[1] The co-defendant in the District of Arizona prosecution, Pierre Zarokian, paid full restitution of $87,367.25 in that action. PSR ¶¶ 67, 71. The Defendant paid nearly $600,000 in restitution to the victims in Criminal Case No. 1:17-CR-327. PSR ¶¶ 68, 70.

warrant substantial departures or variances only in "extraordinary" circumstances. *United States v. Kim*, 364 F.3d 1235, 1245 (11th Cir. 2004) (affirming downward departure when defendants assumed an "enormous amount of debt" to pay full restitution). In *Kim*, the Eleventh Circuit held that extraordinary restitution is a discouraged, though not prohibited, factor for departing downward because the guidelines already consider "'voluntary payment of restitution prior to the adjudication of guilt'" as relevant to acceptance of responsibility. *Id*. at 1242 & n.8 (quoting U.S.S.G. § 3E1.1, cmt. n.1(c)). Payment of restitution thus only supports departures in rare cases where "the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Id*. (internal quotation marks and citation omitted); *see also* U.S.S.G. § 5K2.0(d)(5) (2011) (prohibiting departure based on "unexceptional efforts" to fulfill restitution obligations). The Court further directed district courts to consider factors such as "the degree of voluntariness [of the payments], the efforts to which a defendant went to make restitution, the percentage of funds restored, the timing of the restitution, and whether the defendant's motive demonstrates sincere remorse and acceptance of responsibility." *Id*. at 1244. Accordingly, the Eleventh Circuit has recognized that a "single-minded[]" focus on restitution to justify a variance or departure is unreasonable under Section 3553(a). *United States v. Crisp*, 454 F.3d 1285, 1291

(11th Cir. 2006) (vacating sentence of 5 hours' imprisonment for $480,000 bank

fraud case after defendant provided substantial assistance because punishment

did "not reflect the seriousness of the crime, promote respect for the law, and

provide just punishment for the offense . . ., nor [did] it afford adequate

deterrence to criminal conduct."); *see also Kuhlman*, 711 F.3d at 1329 (rejecting

downward variance to probation based on defendant's payment of full

restitution prior to sentencing as substantively unreasonable).[2]

Nothing about the Defendant's payment of restitution here was

extraordinary. The Defendant had the resources to make such a payment based

on the fortuity of the steep rise in Bitcoin's value while the Defendant has been in

custody. Nor was this early payment indicative purely of "sincere remorse or

acceptance of responsibility." *Kim*, 364 F.3d at 1244. The government will

---

[2] None of the out-of-district authorities cited by the Defendant supports the substantial 20-month variance he seeks here. *See United States v. Curry*, 523 F.3d 436, 441 (4th Cir. 2008) (affirming 5-month downward variance for defendant turning over "substantial assets" to repay all victims in full, with interest, after prior reversal of larger variance, but noting that "it is not at all clear to this court that [defendant] was doing anything other than trying to improve his position at sentencing by making restitution"); *Parry v. United States*, No. CR PJM 15-0488, 2018 WL 1898271, at *2 (D. Md. Apr. 20, 2018) (rejecting claim of ineffective assistance of counsel when defendant received 9-month downward variance from 57-month guidelines sentence, despite evidence that defendant paid full restitution exceeding $2.2 million plus additional payment, suffered from mental conditions, and cooperated with the government); *United States v. Breault*, No. 4:11-CR-3059, 2013 WL 3233231, at *2 (D. Neb. June 25, 2013) (denying ineffective assistance of counsel claim after defendant received 11-month downward variance for full restitution, but expressing no opinion on variance).

elaborate further at the sentencing hearing on the Defendant's ulterior motive for making this payment beyond his desire to improve his standing at sentencing.

Second, the Defendant cites a series of personal characteristics as mitigating circumstances, including his age at the time of the offenses, his difficult upbringing and obsessive-compulsive disorder, and mistreatment he allegedly suffered in custody at the hands of fellow inmates. (Doc. 37 at 5-10). Of course, many defendants have similarly difficult backgrounds but receive no downward variance. Indeed, many people have similar backgrounds, with a fraction of the Defendant's talent and intelligence, and lead law-abiding lives that pose no risk to the sensitive personal information of thousands of innocent people. The Defendant's personal characteristics are appropriate considerations at sentencing, but the United States' low-end recommendation properly balances this factor with the seriousness of the offense and compelling need for general deterrence that otherwise would have supported a higher guidelines sentence.

## CONCLUSION

Based on a full consideration of the Section 3553(a) factors, the United States recommends a low-end guidelines sentence of 57 months, which is sufficient to reflect the seriousness of the Defendant's extortion scheme and the need to deter foreign hackers from engaging in cyber extortion of American victims. Such a sentence not only provides a fair result in light of the history and

characteristics of the Defendant, but also reflects the gravity of his harm and

sends a strong message that cyber attacks from abroad will not be tolerated.

Respectfully submitted,

KURT R. ERSKINE
ACTING UNITED STATES ATTORNEY

 /s Nathan P. Kitchens
NATHAN P. KITCHENS
ASSISTANT U.S. ATTORNEY
600 Richard B. Russell Building
75 Ted Turner Dr., SW
Atlanta, Georgia 30303
Phone: (404) 581-6185
Fax: (404) 581-6181
Email: nathan.kitchens@usdoj.gov
Ga. Bar No. 263930

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above was prepared using Book Antiqua 13-point font, and that I have caused a copy of the foregoing to be served upon Counsel for the Defendant by electronic filing:

This 1st day of March 2021.

/s Nathan P. Kitchens
NATHAN P. KITCHENS