IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NOS. |
| | ) | 1:17-CR-327-MHC |
| JOSHUA EPIFANIOU | ) | 1:21-CR-024-MHC |

## REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM

Defendant, JOSHUA EPIFANIOU, by and through undersigned council, hereby submits the following Reply to the government's Sentencing Memorandum.

First, counsel would like to take a moment to acknowledge the gross inequity between Mr. Epifaniou's prosecution and other defendants accused of computer fraud. If Mr. Epifaniou was an American citizen charged with computer fraud, he would have undoubtedly been granted a signature bond due to his young age, lack of criminal history, and the fact that his offense was non-violent in nature. Once Mr. Epifaniou pled and was sentenced, he would then serve his term of imprisonment in a minimum-security facility ("a jail without walls" as counsel has heard such facilities described.) At this minimum-security facility, Mr. Epifaniou would have been surrounded by other non-violent felons serving sentences for fraud. Mr. Epifaniou would also have the opportunity to see any sentence reduced by u-to 12 months under the First Step Act, if he participated in 24 months of evidence-

1

based recidivist reduction programs.[1] Further, Mr. Epifaniou would be eligible to spend the last six to 12 months of his sentence at a halfway house, like other non-violent prisoners with fraud convictions. Finally, if Mr. Epifaniou was being treated like others convicted of computer fraud, he would be released from custody upon the date his sentence ended. Sadly, when Mr. Epifaniou's sentence ends, his incarceration does not. Rather, Mr. Epifaniou will likely spend months behind bars at an immigration facility, while Cyprus works with the United States Marshals to effectuate his removal.

Therefore, when the government blithely claims that Mr. Epifaniou is seeking "special treatment compared to other defendants,"[2] counsel is pained to see what special treatment Mr. Epifaniou is receiving. No bond, no minimum-security facility, no First Step Act reduction, no halfway house, and no release at the end of his sentence. To remind the Court and the government, Joshua was a 16-year old kid when he began the offense. He did so in order to prevent his mother from being evicted.[3] And at 18-years-old, when other teenagers are partying with classmates, dreaming of college, and marveling at the freedom they will finally experience away

---

[1] https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act (last checked on March 3, 2021).

[2] Doc. 40 at 13.

[3] PSR at ¶ 97.

2

from their parents, Joshua was being beaten bloody at a Cypriot prison. Special treatment? Joshua has actual scars from the imprisonment he has endured.[4] Accordingly, counsel does not see what special treatment Joshua will receive if the Court grants those pragmatic and morally justifiable reductions articulated in his Sentencing Memorandum.[5]

Further, counsel cannot even speculate to what psychological scars Joshua will have to carry with him for the rest of his life. Again, Joshua was ripped away from his beloved mother at 18; thrown into a prison surrounded by murderers and rapists; flown in chains to the United States; and then locked away in another jail filled with federal detainees – many of which of violent, extensive criminal records. The psychological fortitude to endure such hardships would have to be immense, even more so for a teenager with no family support or connections in the United States.

Accordingly, when the government bemoans the need for general deterrence,[6] counsel would ask the Court the following: how much more does Joshua have to suffer, in order for his pain to be sufficiently grotesque for purposes of deterrence? If the gauntlet that Joshua was forced to experience does not warn other teenage

---

[4] PSR at ¶¶ 102, 103.

[5] *See* Doc. 37 at 1-3.

[6] Doc. 40 at 6-10.

hackers, then counsel cannot envision any scenario that would dissuade them. Joshua has been punished far greater, than any defendant accused of similar frauds. He has paid for his crimes.

Second, while the government claims that Mr. Epifaniou's Arizona hack was "sophisticated and pernicious,"[7] the Court should be reminded that Mr. Epifaniou's co-defendant received a sentence of 60 months' probation for this crime.[8] This co-defendant was not simply a mere bystander, but rather, was instrumental in perpetrating the fraud.[9] The Arizona district court believed that the interests of deterrence and punishment were satisfied with a sentence of probation. Simply put, such a sentence strikes a discordant note with the claims made by the government in their Sentencing Memorandum. Further, it should be noted, that Mr. Epifaniou cooperated against the co-defendant without the benefit of a U.S.S.G. § 1B1.8 protected proffer agreement.[10] Counsel is unaware of any such cooperation provided by the co-defendant.

Finally, counsel cannot understand why the government is opposed to any reduction for "good-time," and those nine-months Mr. Epifaniou spent in a Cypriot

---

[7] Doc. 40 at 4

[8] PSR at 2.

[9] PSR at ¶¶ 60-65.

[10] *Id.* at ¶ 64.

4

prison. Concerning the good-time reduction, counsel recognizes that courts do not regularly reduce a defendant's sentence by the anticipated good-time reduction. However, when that reduction would bring a defendant's criminal exposure down to a time-served sentence, common sense dictates that a Court should at least consider such a reduction. The alternative would be for the defendant to be transferred to a BOP facility after his sentencing; sit for three to six months' time,[11] while the good-time reduction is calculated; and then be released when the BOP concludes the good-time reduction would result in a time-served sentence. The Court should recognize that Mr. Epifaniou's sentence could be extended by multiple months just so the BOP can come to the very conclusion counsel advocates: a time-served sentence. Simply put, Mr. Epifaniou should not remain in custody for the sake of bureaucratic busywork.

Further, the government seems content to let the nine months Mr. Epifaniou spent imprisoned on a dismissed, unrelated charge count as dead-time. These nine-months will not be credited towards any sentence. According to the government, this Kafkaesque scenario of human misery is necessary to avoid any inequity with inmates in state custody.[12] The government also claims it would be "unfair to the

---

[11] This amount of time is based upon counsel's personal experience with how long it takes for the BOP to calculate a defendant's good-time reduction.

[12] Doc. 40 at 14.

5

victims" if Mr. Epifaniou were to receive credit for time spent in custody unrelated to the instant offense.[13]

Counsel is confused to why the sad, tragic mistreatment of similarly situated state inmates should be used to justify the sad, tragic mistreatment of Mr. Epifaniou. This is not the *Three Musketeers* – sentencing inequities are not "one for all, all for one." In other words, the oppression endured by one group should not be used to justify the oppression of another. As such, the Court should consider reducing Mr. Epifaniou's sentence by those nine months spent in Cypriot custody on the unrelated, dismissed charge.

Additionally, counsel doubts that any of the victims would think it unfair that Mr. Epifaniou receive credit for the nine hellish months he spent in a Cyprus prison. It is highly doubtful that any of the victims would see these nine months, where the 18-year-old Mr. Epifaniou was physically beaten and placed in segregation, as being too lenient or too forgiving. Maybe they might think it unfair if counsel was seeking to run the instant sentence concurrent to any Cypriot sentence Mr. Epifaniou could face. But this is simply not the case. Mr. Epifaniou spent an excruciating nine months in custody and these nine months will not be credited to any other sentence. Justice will not be offended, but rather served, by applying these nine months to his federal sentence. Accordingly, counsel respectfully requests

---

[13] *Id.*

reducing Mr. Epifaniou's sentence by those nine months spent in Cypriot custody on the unrelated dismissed charge.[14]

Dated: This 12th day of March, 2021.

Respectfully submitted,

/s/ Stephen P. Johnson
Stephen P. Johnson
Georgia Bar No. 940596
Attorney for Joshua Epifaniou

---

[14] Again, counsel must stress that Mr. Epifaniou has made a full payment of restitution. Regarding this restitution, counsel anticipates the government will claim the only reason why Mr. Epifaniou paid-off his restitution is because he also had the opportunity to transfer Bitcoin, which was legitimately acquired, to an account controlled by his Cypriot attorney. To explain, after Mr. Epifaniou transferred the Bitcoin he illicitly acquired to the government's restitution account, the government graciously allowed Mr. Epifaniou thirty minutes to transfer Bitcoin he lawfully earned to his attorney's account in Cyprus. Full restitution was paid and the government returned to Mr. Epifaniou that Bitcoin, which it could not lawfully keep. Mr. Epifaniou did what the government asked of him by paying his restitution and the government honored its ethical standards by returning Mr. Epifaniou's Bitcoin to him. All parties behaved as they should and, despite the government's sentencing recommendation, counsel does thank the government for upholding its ethical obligations and treating Mr. Epifaniou in such a solicitous manner.

Also, it should be noted, that the government did receive a sizable financial benefit from Mr. Epifaniou's decision to pay-off his restitution. To explain, when Mr. Epifaniou paid the restitution to Turner Broadcasting, Bitcoin was trading at approximately $10,000 per coin. For some inexplicable reason, Turner did not liquidate this Bitcoin when transferred to them. Rather, when Turner did liquidate this Bitcoin it was trading at approximately $20,000 per coin. The government will rightly keep the difference between the restitution owed to Turner and the liquidated Bitcoin amount. The government's financial windfall was an unexpected benefit of Mr. Epifaniou's decision to pay-off his restitution, but a benefit nonetheless.

CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing Reply, which is prepared in compliance with LR 5.1B, with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record upon:

> Nathan Kitchens, Esq.
> Assistant United States Attorney
> 600 United States Courthouse
> 75 Ted Turner Drive, S.W.
> Atlanta, GA 30303

Dated: This 12th day of March, 2021.

> /s/ Stephen P. Johnson
> Stephen P. Johnson
> Georgia Bar No. 940596

Federal Defender Program, Inc.
Suite 1500, Centennial Tower
101 Marietta Street, N.W.
Atlanta, Georgia 30303
(404) 688-7530; Fax: (404) 688-0768
Stephen_Johnson@fd.org